May it please the Court. Good morning, Your Honors. My name is Mitchell Bisson, and I represent the appellant, Colonel Robert Frank, in this matter. And if I may, I'd like to reserve about four minutes for Mr. Collister to come up for rebuttal. Keep your eye on the clock. Of course. Your Honors, the details of this matter, while they may seem complex, the essence is simple. This case arises out of Colonel Frank's reporting to the Henderson Police Department of what he reasonably believed to be a crime related to the HOA board members retaining of $3.7 million in surplus funds from the HOA members. However, instead of thoroughly investigating Colonel Frank's claim, Lieutenant Farley took the word of the accused board members, and along with the assistance and subsequent ratification of the City of Henderson, arrested and maliciously prosecuted Colonel Frank, an Air Force veteran with 22 years of service who had never been in any trouble before. What difference does that make? Well, I believe it goes to show that, you know, Mr. Frank, there was no reason for Colonel Frank to be accused of making a known lie. You know, as a trial judge, cases that have to do with this kind of property and dues and things like that generate more hostility than murder cases. People will argue over boundaries and adverse possession and dues and who's on the board of directors. These are hot temperature cases, and they usually involve people who were colonels, airline pilots, doctors, judges, etc., who are used to getting their way. So if what Colonel Frank felt was reasonable, why is what the lieutenant did not reasonable? He took it to the prosecutor. He took it to an independent prosecutor. He didn't just run off and handcuff these guys. He deferred to people up the chain and got the go-ahead. How can that leave him liable? Well, Your Honor, part of this, we believe that the City of Henderson was involved in this. There was a board member at the time, Ann Small, who was also a judge pro tem for the City of Henderson, a former assistant city attorney for the City of Henderson. You'll have to speak up more loudly, sir. You're eating your own words. Sorry. So there were former employees working there and involved on the board of directors. And, Your Honor, Lieutenant Farley based his probable cause on what he said were two lies or misstatements by Colonel Frank, one about expert advice being sought but ignored, and then one involving dues holidays, said that was a lie that he had received this money. As to the expert opinion, Your Honor, as this CPA had said in his opinion, was that what they had done seemed to be proper. His advice was actually he believed there should be a dual vote of the membership and the board of directors. But really, you're not answering my good colleague's question. My good colleague says he went through. You suggest he didn't do anything to help your client. He thought your client was bad. And I don't know whether I agree with that because there are things in Farley's affidavits that include favorable affirmation to your client. But let's get past that. All he did was he said, Okay, I've investigated this. And after I investigate this, I'm filing these affidavits for the warrants with the city's attorney's office who approved them. And then at that point, there's no evidence in the record that Farley did anything. After that, it was all the city attorney. The city attorney approved the warrants, presented them to the magistrate judge. The magistrate judge reviewed them and issued the warrants. And the attorney's office filed the complaints. Now, it doesn't seem to me that one can suggest that what Mr. Farley did was bad because all he did was put together an affidavit. He presented it to the right people. Why is that a problem? After that, he was out of it. He didn't have anything to do with it. Yes. And your honor, I would submit that again, from the outside of this litigation, this involves more than just Lieutenant Farley. This involves a whole I don't want to say conspiracy. Lieutenant Farley. Now, what is this? Your claim is that there's a Frank's case here that he presented fraudulent information in the affidavits? I do believe that he when he said fraudulent about it, when he stated that what Robert Frank stated was a misrepresentation, I believe that was incorrect. And he knew that was a reasonable interpretation to say that if Mr. Porter's report said that it complied with the tax ruling, it did comply with the tax ruling. Yes, your honor. And Mr. Frank was saying that the advice was that it should have been a do a vote. But your honor, there was also in the affidavit for us reference to Colonel Frank's wife and how she was running for election. Again, when Colonel Frank actually filed that's in Farley's affidavit. Yes. And when Colonel Frank made his criminal complaint to the city of Henderson, his wife actually at the time had not been running for this. You're telling us because they have a pro tem judge who lives there, the entire court should be disqualified, and but when it's applied towards you to say, well, maybe she was thinking about running when he did this and then she did run, we have to say, no, you can't consider that. It's not just wrong. It's malicious and it's evil. And, you know, you're just looking at things with the glasses on that turn everything your way, and that's not the standard we're going to apply. Counsel, do you want four minutes for him? Yes, your honor. Thank you. Judge Bea, Judge Lasnik, Judge Smith, good morning. May it please the court. I'm Brandon Kemble on behalf of the respondent city of Henderson. The court should affirm the district court's orders for summary judgment and granting in part the motion to dismiss for three reasons. First, I think the court has identified this is a Smitty case. This is a Newman case. This is a case where the independent acts of prosecutors immunize the officer who acted in good faith from liability against a malicious prosecution claim. They had a burden on summary judgment, and they had a burden to rebut that presumption, and they failed. They didn't even address it in the lower court in any of their moving papers or in their opposition. No, counsel, I can't help but look at this, especially as a trial judge, and say, okay, the Lieutenant Farley realized there's nothing here, and he said, go away. Why couldn't he have stopped there? And, you know, Mr. Frank doesn't get a lot of what he wants, but he gets the case dismissed out of prosecutorial discretion. Why can't he just walk away and live to fight another day? But they have to fight each other all the time. What's behind that? You know, I don't know, and I don't think it's certainly not presented on the record what's behind it. There's no explanation on the record from them what is behind it. And in these cases of probable cause, I think we don't look at those sorts of things. We look at what were the officers objectively looking at at the time they prepared these arrest warrants. And on these facts, you know, objectively, you have a five-page arrest warrant that lays out all of the documents that Farley reviewed in reaching his conclusions and identifies specific documents that indicate the basis for those conclusions. And the only response from the plaintiffs here is that we just have a different version, and that falls squarely under the Newman case. The Newman case, I think, is really controlling here. The citation for that oh, gosh. It is not cited in the brief, and that's why I wanted to give the Court the citation Did you send a 28-J letter? We did not. Then why don't you go to some other point? I will. Well, I can move to Smitty, which basically holds the same thing, Your Honor. And it is that presumption, again, that the immunizing or that the filing of charges is immunizing for the officer in question here, and that has to be rebutted. That has to be rebutted through a showing of improper influence by the officer on the prosecutors. It has to be shown by the withholding of the prosecutor. The only thing Farley did in this case was investigate the claims. He investigated the claims trying to help Frank. When he investigated the claims, he found them lacking. And then he found these other things, and his affidavits have two facts that really say why he's giving his affidavits. And then he presents them to the city attorney, and he's done. Why are we trying to get all this immunization here? Isn't there probable cause in the affidavits? Oh, I would agree that there is probable cause, and the district court rightly determined that. You can look at the documents that Frankenstevens presented in this case, the Porter memo saying, hey, what the board is doing here is authorized. What about Featherolf's evidence? Yes. Well, it's irrelevant, because of the ---- But it was considered by Farley, correct? No, it was not. It never was? No. The Featherolf evidence comes nearly two weeks after the charges are filed in this case. So it may have been presented to Farley, but that's after the ---- I thought it was presented to him and considered by him. Not in preparing the affidavits. And you can ---- Okay. You can ---- Well, that's what I want to make sure of, because I don't want to ---- You can go right to the volume two of the record, page 257 and 259, and it specifically says in that declaration, the Featherolf declaration, that he met with him after the charges had been filed. All this evidence is presented. And then, in fact, you know, that's a good point for Farley, because one of the elements in overcoming this presumption against immunization is, hey, that he concealed evidence. Well, what does Farley do when they present him with his evidence? He says, hey, this is out of my hands. Go present it to Frank's defense counsel, or go present it to the court. I think there's another important thing that hasn't been emphasized here. We're not just talking about the city of Henderson prosecutor that reviewed this. We're not just talking about a municipal court judge from the city of Henderson. We're also talking about an independent prosecutor who, from another jurisdiction, who rescreened the entire case for a determination of probable cause. And then you have proceedings going on for another year in front of an independent judge who has multiple opportunities to determine that there's not probable cause, but moves forward with the case anyway. Kennedy, you stole my question. I was going to say, wasn't there another prosecutor who looked at this as well? Yeah, that's in the Aguayo declaration at volume three of the record at page 374. You can look at paragraphs 5 and paragraphs 10 for her undisputed declaration that she read. But when she did decide to dismiss the case, it wasn't based on any new information. It was the interest of justice, expense of prosecution, weighing those things that an independent prosecutor has a right to weigh. That's paragraph 10 of her declaration. I mean, we're talking about a misdemeanor here, and you are looking at retaining Well, you're looking at retaining very expensive experts to go through all of this complicated tax stuff. And another prosecutor from another jurisdiction with a busy caseload, I think she set forth the reason for why she dismissed it. There's another point here I think that the Court has additional grounds on which to find for the city here, and that is that Lieutenant Franks was entitled to qualified immunity in this case. We're talking Farley. Farley. Sorry, I did. I did. I misspoke, Judge Smith. Farley was entitled to qualified immunity in this case. Generally, and kind of along the same principle, when you have a judge who reviews an arrest warrant, as this case is held in Armstrong, citing the Messerschmitt Supreme Court case, that is the best evidence of a good-faith act that you can have that the officer was — decision was reasonable to have the warrant issued. There's nothing that they've done to rebut that presumption, and that is their burden on summary judgment, to rebut these presumptions. If you look at the exhibits that they cite in their opposition to the motion for summary judgment, we've got three depositions, witness reports by them, the Porter Tax Memo, which helps us. We've got the Farley affidavit for the warrants, five pages referencing documents. We've got the IRS explanation of items. That's one piece of evidence I'd like to focus on very quickly, because in their moving papers, they talk about how Farley has misconstrued this and rely on this as the ultimate conclusion of the IRS's investigation. First off, this IRS explanation of items letter at page 251 of the record, I don't even know if it's authentic, but I — but it certainly is a preliminary document. And if you look at that document, it clearly says that the HOA's response is pending. This is just the IRS's first volley as to what they think is going on. There's nothing beyond that. And there's certainly no explanation by a competent expert of how this proves that Farley was wrong and Frank was right, if that's even the right question to be addressing, because we're talking about reasonable suspicion. We're talking about probable cause at the time he issued the arrest warrant. There's no other — there's the Featheroff affidavit, which, again, is irrelevant because it comes after the fact, and then there is an expert declaration on the ultimate legal conclusion of whether there was probable cause. None of that stuff helps their case to carry their burden to demonstrate a genuine issue of material fact. Very quickly, with regard to the motion to dismiss, if you find for this city, if you find that Farley had probable cause, any Monell liability claims go away. You can't have Monell liability without an individual actor. And the judge did not abuse her discretion here. They had multiple opportunities to amend. Issues were fully briefed. She informed them of the defects in their pleadings, and it was not an abuse of discretion to deny a motion to amend it, and therefore, the Court should affirm the district court's orders. Thank you, Judges. Thank you very much. Please state your name for the record. Yes. Matthew Collister, Collister & Solicitors, on behalf of the appellant. Good morning. May it please the Court. I'd like to address just two or three issues that were raised by Your Honors before. What was this rife political event circulating all of this? The Court is correct. These are hotly contested, hot-button items. HOAs have been traditionally. The Court is correct to ask, what did Farley do wrong? I'm here to tell you exactly what he did wrong. And the problem is all of these issues, all of them. And they are all circulated around questions of fact. The McKenzie v. Lamb decision tells us that the existence of probable cause itself is generally a fact question for a jury to decide. That did not happen here. That's the heart of our appeal. What did occur was the ultimate issue in this particular case. We're really talking about whether there's any chance that these affidavits that were filed by Farley, who were then filed with the city attorney, has alleged probable cause in those affidavits. So why don't you go right at the affidavits? I'd like to. Because it seems to me that's your best argument, if you've got one. Thank you, Your Honor. The affidavits of Sergeant Farley in large measure focus upon the events surrounding the Porter memo, in which he says there was a lie circulated, made by my client, Colonel Franks. The lie, he says, was somehow distorting what that memo said and distorting the resolution that adopted or at least pretended to adopt that memo. Let's take a look at both that recommendations made by the Porter memo and what my client reported to Sergeant Farley. The memo says there should be two things. There should be a vote of the membership. They did not do that. And then the ---- I thought that the memo said the Board had the legal authority to elect the members. It does. But it's very craftily, cautiously created. And he goes on to state that it's in the best ---- Well, but I'm just suggesting that in reading what we have in the affidavits as well as the evidence, it seems to me that the Gary Porter tax research memo says the Board has the legal authority to elect to reimburse the excess dues in adopting the resolution and need not have the approval of the HOA membership. But then why does he go on to say it's better practice? And I recommend overtly that you do see that. Better practice, but I mean, all I'm suggesting is if that's one of the alternatives that the Porter research memo said and they did it, I don't suggest that it's opposition to what the memo said. My suggestion is neither is it evidence of an intentional, deceitful act, a lie by my client, Colonel Franks, which is what they have to have. The next part of the affidavit was based on another fact, that your client knew of, voted on and received a $100 dues holiday. But that's not a dues holiday, and nor is it a refund or a repayment. If you look cautiously and carefully what that is, they tell you that they were thinking about an increase in the 2008, then they decided they didn't need it, so the forgiveness of an unnecessary increase is not the same thing as a refund of $700,000. Again, counselor, we're talking about probable cause here. And we're saying, there is no question he got $100. There's no question he got $100. No question that he knew of and voted on getting the $100. You just want to put a different spin on what the $100 is. And on a probable cause determination, I mean, you may win, absolutely, after everything's taken care of. You may win the ultimate. But on a probable cause, that's all we're looking at here. Probable cause, as I understand it, requires that there be an absolute determination by Farley that there was conduct committed by my client somehow that beyond question no other determination could have been made. Respectfully, I don't see any evidence of the requisite deceit that he seems to find. And what does he do? It seems to me that you want to make a good argument that you see it differently. But nonetheless, the facts are nonetheless, as I have outlined them, your client knew of, voted on, and received a $100 due. No question. And it was related to the 2007 excess HOA membership income. And there's no question the tax research memo said the board had the legal authority to elect to reimburse the excess dues in adopting the resolution. With that, Farley said in his affidavit, I think I have probable cause for an arrest here. From that point, there's nothing Farley did. From that point, it all went to the city attorney. We certainly have alleged that there should be the entire city who should be here defending this action. The Court's aware of that. We saw it for the early motions dismissed, which we think were equally inappropriately granted and prematurely granted. Well, if you look at the memo, if you look at the exact language of the resolution, what does it say? Resolved that the excess of membership income over membership expenses for the year ended December 31, 2007. That's not just that year. That's the full $3.5 million that had been accumulated by this runaway HOA since 2002. That's what he reported. Well, frankly, he didn't say it was all. He said it was related to the 2007 excess membership income. But the report made without question in the affidavit that is in front of you by Mr. Franks, Colonel Franks to Farley, was there's a $3.5 million in excessive funds that had been accumulated and neither refunded nor reimbursed nor paid taxes on. And that's what the law requires, and that's what IRS Ruling 70.604 says, which they say we're going to honor. There's three lies in this resolution. Number one, that the excess of membership income over expenses for the year ending December 31, 2007 shall be applied against the subsequent tax year member assessments. That didn't happen because there were no subsequent year tax assessments. Kennedy, you have two minutes over your time. Thank you very much for your presentation. Thank you. Thank you.
judges: Bea, N.R. Smith, Lasnik